CORRECTED

# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 23-134V**
UNPUBLISHED

TRACY GORDON,

Petitioner,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent.

Chief Special Master Corcoran

Filed: July 20, 2026

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Mark Kim Hellie, U.S. Department of Justice, Washington, DC, for Respondent.*

## RULING ON ENTITLEMENT[1]

On January 29, 2024, Tracy Gordon filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA"), a defined Table Injury, which was caused by an influenza ("flu") vaccine administered on October 11, 2022. Petition at 1.

For the reasons set forth below, I find Petitioner has established that she meets the requirements for compensation.

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I. Procedural History

On April 16, 2025, Respondent filed his Rule 4(c) Report opposing compensation, arguing that Petitioner does not meet the requirements of a Table injury and has not established her injury was caused-in-fact by the vaccination. Respondent's Rule 4(c) Report ("Report") at 6-9. Petitioner filed a motion for a ruling on the record on June 6, 2025, arguing that she is entitled to compensation. Petitioner's Motion for a Ruling on the Record Regarding Entitlement ("Mot."). Respondent filed a response on June 23, 2025. Response to Motion for Ruling on the Record Regarding Entitlement ("Resp."). Petitioner filed a reply on June 30, 2025. Petitioner's Reply to Respondent's Response to Motion for Ruling on the Record Regarding Entitlement ("Reply").

## II. Factual Background

### A. Medical Records

Petitioner received a flu vaccine in her left shoulder on October 11, 2022. Ex. 1 at 1. Prior to her vaccination, she had a history of back pain that began in 2021. Ex. 2 at 19.

A little more than one month later (November 14, 2022), Petitioner reported left shoulder pain to Dr. Geoffry Tsoi that started "a few days after" a vaccination and "hasn't subsided." Ex. 4 at 8. Her pain was noted as recurrent and "waxing and waning since onset". *Id.* at 9. She also exhibited "limited mobility of the left upper extremity". *Id.* Petitioner was diagnosed with adhesive capsulitis and prescribed prednisone. *Id.* at 10.

Petitioner reported shoulder pain again on December 21, 2022, to Kevin Xunan, D.O. Ex. 6 at 86. Her pain was identified to be emanating from "the deltoid where [a] flu shot was given that began in October." *Id.* An examination noted Petitioner's pain was not from her deltoid, however, "but her latissimus dorsi." *Id.* at 87. The latissimus dorsi was "tender" and she was diagnosed with a strain of that muscle, as well as upper arm pain and upper extremity somatic dysfunction. *Id.*

On January 30, 2023, Petitioner saw Dr. Teresa Whitley for pain that "started after a flu shot in October of last year." Ex. 6 at 75. Her pain was in the upper deltoid and radiated down her arm. *Id.* at 76. Dr. Whitley diagnosed Petitioner with possible rotator cuff tendinitis. *Id.* at 76.

Petitioner had two subsequent vaccinations in her affected left shoulder: a Covid-19 vaccine on January 30, 2023, and a Tdap vaccine on February 28, 2023. Ex. 7 at 11; Ex. 6 at 39.

On March 8, 2023, Petitioner began physical therapy. Ex. 2 at 18. She reported a history of "left shoulder pain since receiving a flu vaccination." *Id.* at 19. Petitioner also "noted occasional crepitus" and chronic low back pain for the past two years. *Id.*

On March 29, 2023, Petitioner saw Dr. Kular for left shoulder pain, stating onset was in October. Ex. 6 at 32. She also described "[n]o previous trauma or injuries to left shoulder." *Id.* at 33. An examination showed pain, weakness, but full range of motion with slight discomfort and pain. *Id.* An MRI on April 27, 2023 showed a bone edema, sprains and/or tears, and osteoarthritis that was impinging the AC joint and acromion. *Id.* at 21-22.

Petitioner again sought treatment on May 22, 2023, for "shoulder pain for the past 7 months after receiving her flu shot (10/2022)." Ex. 7 at 6. She was assessed with shoulder pain secondary to impingement syndrome and received a cortisone injection. *Id.*

On December 5, 2024 (and after this claim's initiation), Petitioner had a follow-up regarding her lower back pain. She described a left shoulder pain that "began in October of 2022 after receiving a flu shot." Ex. 9 at 1.

### B. Affidavit Evidence

Petitioner submitted an affidavit on February 22, 2024, describing her injury and course of treatment. She stated that her pain and reduced range of motion began "[w]ithin twenty-four hours" of receiving a flu vaccine on October 11, 2022. Ex. 8 at 1.

## III. Fact Findings and Ruling on Entitlement

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

In particular, a petitioner must establish that she suffered an injury meeting the Table criteria (*i.e.* a Table injury), in which case causation is presumed, or an injury

shown to be caused-in-fact by the vaccination she received. If a petitioner establishes a Table injury the burden shifts to respondent to establish a more likely alternative cause. Section 13(a)(1)(A), 11(c)(1)(C)(i), 14(a). If a petitioner cannot establish a Table injury, or she may pursue causation-in-fact under the legal standard set forth in *Althen v. Sec'y of Health & Hum. Servs.*, 418 F. 3d 1274, 1278 (Fed. Cir. 2005).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an HPV vaccine. 42 C.F.R. § 100.3(a)(XVI)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g., NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

In addition to causation, a petitioner must also meet the requirements establishing that the vaccine received is "covered" by the Program, the duration and severity of petitioner's injury, and the lack of other award or settlement.[3] With regard to severity, a petitioner must show that she suffered the residual effects or complications of her injury or condition for more than six months after the administration of the vaccine. § 11(c)(1)(D)(i); *see Song v. Sec'y of Health & Hum. Servs.,* 31 Fed. Cl. 61, 65-66 (1994), aff'd, 41 F.3d 1520 (Fed. Cir. 2014) (noting that a petitioner must demonstrate

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

the six-month severity requirement by a preponderance of the evidence). Finding that petitioner has met the severity requirement cannot be based on petitioner's word alone, though a special master need not base their finding solely on medical records. Section 13(a)(1); *see Colon v. Sec'y of Health & Hum. Servs.*, 156 Fed. Cl. 534, 541 (2021). Severity must be established regardless of whether the claim arises under the Table or is a causation-in-fact claim.

### A. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

#### 1. Petitioner Had No Prior Left Shoulder Condition or Injury that would Explain her Symptoms

The first requirement for a Table SIRVA is a lack of evidence of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after. 42 C.F.R. § 100.3(c)(10)(i). Respondent claims that Petitioner had a history of chronic back pain beginning a year before vaccination. Report at 6. Respondent also suggests Petitioner had pre-existing shoulder pathologies that reflect a traumatic injury to her shoulder. *Id.* Additionally, Respondent focuses on the combination of back pain due to "lifting heavy objects" and references to degenerative changes in Petitioner's MRI as evidence that she had a chronic, pre-existing degenerative issue. Report at 4.

However, there is no indication that Petitioner's back pain or degenerative changes would explain her symptoms. Instead, the records show that Petitioner had no shoulder pain or limitations as of October 11, 2022. Ex. 3 at 12-14. Further, Petitioner consistently linked her shoulder pain to the vaccination in her left shoulder, and not any prior lingering back pain or a prior traumatic injury. *See, e.g.,* Ex. 6 at 86 (record from December 21, 2022 noting Petitioner's pain began in October where a flu shot was given); Ex. 6 at 75 (record from January 30, 2023 stating Petitioner's pain "started after a flu shot in October of last year). This provides further evidence that any prior condition does not explain the symptoms associated with Petitioner's SIRVA. Of course, some of the findings may establish the existence of underlying problems or circumstances that may have exacerbated Petitioner's injury. But such issues can be addressed when calculating damages. The mere existence of conditions such as work-related duties does not defeat a showing that Petitioner suffered a SIRVA.

**2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of her Vaccination**

The medical records preponderantly establish onset of injury close-in-time to vaccination. Petitioner first reported shoulder pain on November 14, 2022. Ex. 4 at 8 Thereafter, she consistently linked her shoulder pain to the flu vaccine. *See, e.g.,* Ex. 6 at 86 (record from December 21, 2022 noting Petitioner's pain began in October where a flu shot was given); Ex. 6 at 75 (record from January 30, 2023 stating Petitioner's pain "started after a flu shot in October of last year).

Respondent argues that Petitioner first reported pain beginning "a few days after" vaccination. Report at 7. While there are some inconsistencies in Petitioner's reporting, when the record is viewed in its entirety there is ample evidence to find proper onset began near in time to the vaccination. Further, Program petitioners are not required to marshal records setting forth with chronographic specificity the precise day and hour that their onset manifested. As noted above, Petitioner reported pain fairly quickly after her vaccination, and repeatedly linked her shoulder pain to the October 11, 2021, vaccination.

Accordingly, there is preponderant evidence that establishes the onset of Petitioner's left shoulder pain more likely than not occurred within 48-hours of vaccination.

**3. Petitioner's Pain was Limited to her Vaccinated Shoulder**

The record also establishes that Petitioner's pain was limited to her left shoulder. The reported symptoms, diagnostic evidence, and treatment were all limited to her left shoulder. *See, e.g.*, Ex. 3 at 7-8. (reporting left shoulder pain on November 8, 2019); Ex. Ex. 8 at 8 (describing left shoulder pain and restrictions following the flu vaccination).

Respondent argues that Petitioner experienced pain outside her shoulder, citing the December 21, 2022 record wherein she reported pain radiating down her arm and was diagnosed with a strain in her latissimus dorsi. Report at 6-7. The mere existence of such record complaints does not defeat a showing that Petitioner not only did experience shoulder-specific pain, but that most of her complaints and treatment efforts were aimed at that. Additionally, the majority of treatment records consistently demonstrate Petitioner's pain was limited to her shoulder. *See, e.g.,* Ex. 2 at 18-19 (physical therapy records showing testing and procedures focused on the left shoulder). Further, there is no further references to a strain in her latissimus dorsi other than that December record. Accordingly, preponderant evidence supports this Table element as well.

### 4. There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent argues that Petitioner had chronic back pain before her vaccination and pre-existing shoulder pathology reflect a traumatic injury.

As discussed above, records show that Petitioner consistently linked her shoulder pain to the vaccination in her left shoulder. Further, there is no indication that another condition or abnormality exists that would explain Petitioner's shoulder symptoms.

### B. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

That record shows that Petitioner received a flu vaccine intramuscularly on October 11, 2022, in the United States. Ex. 1 at 1, *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 8 at 2; Section 11(c)(1)(E) (lack of prior civil award).

Based upon all of the above, Petitioner has established that she meets the severity requirements of the Vaccine Act, and that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case. (I note, however, that this is not a matter in which a large pain and suffering award should be expected – especially since Petitioner received *two additional vaccines* in the same affected shoulder within a few months of vaccination, undermining somewhat a finding that her injury pain was all that severe).

## Conclusion

**For all of the reasons discussed above, and based on consideration of the record as a whole, I find Petitioner is entitled to compensation.**

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**

Brian H. Corcoran
Chief Special Master